UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

CORY REID,

                Plaintiff,

-against-

CITY OF NEW YORK, *et al.*,

                Defendants.
-------------------------------------------------------X

**MEMORANDUM
AND ORDER**
19-CV-324 (AMD)(ST)

**DONNELLY**, United States District Judge:

The plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by the Brooklyn Detention Complex (BDC) warden, several corrections officers, and the City of New York, seeking compensatory and punitive damages.[1] The plaintiff's request to waive the filing fee is granted pursuant to 28 U.S.C. § 1915.[2] For the reasons below, the plaintiff's Equal Protection claim and the claim against the City of New York are dismissed without prejudice, and his request for attorneys' fees is dismissed with prejudice.

## BACKGROUND

The following facts are taken from the complaint, which I assume to be true for the purposes of this motion. The plaintiff was incarcerated at BDC beginning in October 2017. (ECF No. 1 at 4.) He started working in the library in April 2018, when another worker left his position. (*Id.*) On July 30, 2018, BDC hired a new legal coordinator for the law library and the plaintiff introduced himself to her that same day. (*Id.*) During their conversation, the plaintiff

---

[1] The plaintiff was detained at BDC, but was released on January 10, 2019, before he filed this action. (ECF No. 13.)
[2] Although plaintiff is barred from filing civil actions *in forma pauperis* while he is a prisoner, *see Reid v. Ward*, No. 16-CV-1352 (LAP) (ECF No. 9) (May 4, 2016 Bar Order Under 28 U.S.C. § 1915(g)), the bar does not apply here because he was released from custody before he mailed the complaint.

1

told the legal coordinator about his criminal history; he told her that he was incarcerated for a sex offense in 2013, but the case was ultimately "dismissed on its merits." (*Id.*) Later that day, the legal coordinator told other BDC staff and inmates that she did not want the plaintiff to work with her in the library because of his criminal history, and the inmates reported her comments to the plaintiff. (*Id.*)

On August 1, 2018, the plaintiff preemptively filed a grievance with the BDC Inmate Grievance committee against the legal coordinator for attempting to fire him unfairly. (*Id.*) On August 2, 2018, Officer Kelly, the Inmate Grievance Officer, told the plaintiff that his grievance matter had to go directly to Warden Matthews because it was asserted against a BDC employee. (*Id.* at 5.) The plaintiff completed a voluntary statement form in connection with his grievance and Officer Kelly took it to Captain Luna that day. (*Id.*)

On August 10, 2018, Captain Luna and Officer Warner came into the law library and told the plaintiff and another inmate that they could no longer work in the library, because they were in "protected custody" and BDC wanted to ensure they were safe from the general prison population.[3] (*Id.*) The plaintiff wanted to ask Captain Luna about his termination, and who would work in the law library when protected custody inmates visited the library, so he followed her out of the law library; Captain Luna told him she did not want to discuss the matter further. (*Id.* at 7.) The plaintiff told Captain Luna that he was confused because protected custody and general population inmates visited the barbershop, went to religious services, and to visiting room at the same time. (*Id.*) Officer Marshall was present for this conversation. (*Id.*)

On August 11 and 12, 2018, the plaintiff made six grievance calls to 311, alleging that

---

3 The plaintiff points out that the conversation took place in the library while there were general prison population members present, but the officers did not ask the plaintiff to leave the library right away to avoid being around them. (*Id.* at 6.)

2

Officer Marshall, Officer Wamer, Captain Luna and Warden Matthews discriminated against him. (*Id.* at 9.) On August 13, 2018, Officer Kelly asked the plaintiff to write two more voluntary statement forms in connection with two of the 311 grievance calls, so she could give them to Captain Luna and Warden Matthews. (*Id.* at 10.) The plaintiff asked Officer Kelly about his other four 311 grievances, and Officer Kelly said she would check her computer for them. (*Id.*) The plaintiff says that after this conversation, Captain Luna and Warden Matthews told Officer Kelly to try to "make the plaintiff forget" about the other four 311 grievance calls, or tell him they were all merged into one grievance matter since they were similar complaints. (*Id.* at 11.)

On August 15, 2018, Officer Kelly told the plaintiff that all his grievance calls were merged into one grievance matter. (*Id.*) On August 17 and 18, 2018, the plaintiff made additional grievance calls to 311, complaining about Officers Kelly, Marshall and Wamer. (*Id.* at 14.)

The plaintiff also alleges that the BDC did not respond appropriately when he had an asthma attack on September 15, 2018. (*Id.* at 15-16.) The plaintiff says that Officer Pullem, who works in the clinic at BDC, received a call that the plaintiff was having an asthma attack and did not respond to treat the plaintiff. (*Id.*) The plaintiff claims that Officer Pullem also told other medical staff not to bring the plaintiff to the clinic because he had other people in the clinic at that time. (*Id.*) The plaintiff reported this incident to 311 that same day. (*Id.* at 16.)

The plaintiff alleges seven causes of action pursuant to § 1983: 1) retaliation against Captain Luna, Warden Matthews, Officer Marshall, and Officer Wamer, for terminating him from the law library; 2) retaliation against Captain Luna, Warden Matthews, and Officer Kelly, for merging his six 311 grievance calls into one matter; 3) "failure to intervene" against Officers

3

Marshall and Warner for not intervening when he was fired from the law library; 4) violation of his Equal Protection Rights under the Fourth Amendment against Captain Luna and Warden Matthews for his termination from the law library; 5) "failure to intervene" against the City of New York for "failing to train" officers "on how to intervene when inmates constitutional rights are being violated;" 6) deprivation of his First and Fourteenth Amendment rights to petition the government against Officer Kelly, Captain Luna, and Warden Matthews, for not allowing his grievances to be processed and "filed in harmony with the normal prison procedure;" and 7) deprivation of his Fourteenth Amendment right to be free from cruel and unusual punishment against Officer Pullem for being deliberately indifferent to his asthma attack. (ECF No. 1 at 19-24.) He seeks compensatory, punitive, and nominal damages, and attorneys' fees pursuant to 42 U.S.C. § 1988. (*Id.*)

## LEGAL STANDARD

Because the plaintiff is proceeding *pro se*, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Even under that standard, his complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint fails to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual

4

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000).

## DISCUSSION

All of the plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). To state a claim under Section 1983, a plaintiff must allege (1) he was deprived of his constitutional rights, privileges, or immunities, and (2) that the deprivation was "committed by a person acting under the color of state law." *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)). Moreover, a plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

*The Equal Protection Claim*

In his fourth claim, the plaintiff alleges that Captain Luna and Warden Matthews violated his Fourteenth Amendment Equal Protection rights by firing him from the law library without

justification. (ECF No. 1 at 22.)

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated persons be treated alike. *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal citations omitted). "A person bringing an action under the Equal Protection clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Yang v. New York City Transit Auth.*, No. 01-CV-3933, 2002 WL 576079, at *3 (E.D.N.Y. Apr. 16, 2002). There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause. The plaintiff could point to a law or policy that "expressly classifies persons on the basis of race," identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner; or allege that a facially neutral statute or policy has an adverse effect and was motivated by discriminatory animus. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (internal citations omitted).

The allegations in the complaint do not establish a *prima facie* violation of the Equal Protection Clause. The plaintiff does not allege that he is a member of a particular class, identify a law or policy that deprived him of equal protection, or claim that the defendants acted with intent to discriminate against him in particular. *See Yang*, 2002 WL 576079, at *3. The plaintiff alleges that the defendants' actions were arbitrary or irrational, but his claim must be dismissed because he does not allege that the defendants were motivated by an impermissible consideration — like the plaintiff's race, religion, sex, or another protected characteristic. *See Payne v. Huntington Union Free Sch. Dist.*, 101 F. Supp. 2d 116, 119 (E.D.N.Y. 2000) (dismissing the plaintiff's Equal Protection claim that she was fired because she was married to district superintendent because "even taking [her] allegations as true, there is no allegation that the

actions—as arbitrary or irrational as they may have been—were motivated by a constitutionally impermissible consideration."); *Smith v. Defendant A*, 08-CV-[], 2009 WL 1514590, at *4 (S.D.N.Y. May 29, 2009) (complaint failed to state an Equal Protection claim based on plaintiff's termination from prison job). Accordingly, the plaintiff's Equal Protection claim is dismissed without prejudice.

*The "Failure to Intervene" Claim Against the City of New York*

In his fifth claim, the plaintiff names the City of New York, alleging "failure to intervene," "deliberate indifference to the plaintiff's rights," and "failing to train correction officers on how to intervene when inmates constitutional rights are being violated." (ECF No. 1 at 22.)

A municipality may not be held liable under § 1983 solely because its employee committed a civil wrong; in other words, municipalities are not liable through the doctrine of *respondeat superior*. *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion). Thus, in order to state on a claim against a municipality under Section 1983 based on the acts of a public official, a plaintiff must allege: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects Congress' intention that municipalities not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). There must be a "direct causal link" between a municipal policy and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The plaintiff claims that his constitutional rights were violated, but he does not allege that

actions—as arbitrary or irrational as they may have been—were motivated by a constitutionally impermissible consideration."); *Smith v. Defendant A*, 08-CV-[], 2009 WL 1514590, at *4 (S.D.N.Y. May 29, 2009) (complaint failed to state an Equal Protection claim based on plaintiff's termination from prison job). Accordingly, the plaintiff's Equal Protection claim is dismissed without prejudice.

*The "Failure to Intervene" Claim Against the City of New York*

In his fifth claim, the plaintiff names the City of New York, alleging "failure to intervene," "deliberate indifference to the plaintiff's rights," and "failing to train correction officers on how to intervene when inmates constitutional rights are being violated." (ECF No. 1 at 22.)

A municipality may not be held liable under § 1983 solely because its employee committed a civil wrong; in other words, municipalities are not liable through the doctrine of *respondeat superior*. *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion). Thus, in order to state on a claim against a municipality under Section 1983 based on the acts of a public official, a plaintiff must allege: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects Congress' intention that municipalities not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). There must be a "direct causal link" between a municipal policy and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The plaintiff claims that his constitutional rights were violated, but he does not allege that

there was an official City of New York policy or custom that caused the violation. Accordingly, the § 1983 claim against the City of New York is dismissed without prejudice for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

*The Plaintiff's Request for Attorney's Fees Pursuant to Section 1988 Claims*

To the extent Plaintiff seeks attorneys' fees pursuant to 42 U.S.C. § 1988, that request is denied with prejudice. *Pro se* litigants may not recover fees under § 1988. *See Jackson v. County of Rockland*, 450 Fed. Appx. 15, 19 (2d Cir.2011) (summary order) ("The Supreme Court has spoken clearly that a *pro se* litigant, whether or not he is a lawyer, may not receive attorney's fees under Section 1988."); *Gordon v. City of New York*, No. 09 Civ. 04577, 2015 WL 1514359, at *5 (E.D.N.Y. Apr. 3, 2015) ("Indeed, a party appearing *pro se* is not entitled to fees under § 1988, even if she is an attorney."); *Peterson v. City of New York*, No. 11 Civ. 3141(DLC), 2012 WL 75029, at *5 (S.D.N.Y. Jan. 9, 2012) ("Plaintiff's claim for attorney's fees pursuant to 42 U.S.C. § 1988 fails because, although plaintiff is an attorney, he is proceeding *pro se* and is thus not entitled to attorney's fees.").

## CONCLUSION

Accordingly, the plaintiff's Equal Protection claim and his claim against the City of New York are dismissed without prejudice; his request for attorneys' fees pursuant to § 1988 is dismissed with prejudice. No summons will issue to the City of New York and the Clerk of Court is respectfully directed to amend the caption. The remaining claims may proceed against the individual defendants. The Clerk of the Court is directed to issue a summons against the individual defendants and the United States Marshals Service is directed to serve the complaint and this Order on them, without prepayment of fees. The Clerk is also directed to serve a copy of this Order on the Special Federal Litigation Division of the Office of the Corporation Counsel. The case is referred to the Honorable Steve Tiscione, United States Magistrate Judge, for pretrial

8

supervision. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Ann M. Donnelly
Ann M. Donnelly
United States District Judge

Dated: April 11, 2019
Brooklyn, New York